IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



UNITED STATES OF AMERICA

v.                                          Criminal No. 3:15CR67

KEVIN SHIONELL JEFFERSON,

    Petitioner.

## MEMORANDUM OPINION

Kevin Shionell Jefferson, a federal inmate proceeding pro se,
brings this MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR
CORRECT HIS SENTENCE ("§ 2255 Motion," ECF No. 62). Jefferson
argues that he is entitled to relief on the following grounds:[1]

Claim One      Jefferson is actually innocent of the
               crime of which he was convicted. (§ 2255
               Mot. 1.)

Claim Two      "The Government violates United States
               Sentencing    Guidelines    [("USSG")]
               Section 6B1.4(a)(1), (2)   when   the
               Government  submitted and  stipulated
               misleading  facts  in  the   Plea
               Agreement['s] attached Statement of
               Facts." (Id. at 5.)

Claim Three    "The Government['s] factual basis for the
               plea is inadequate to support the guilty
               plea in Count One due to the misleading
               facts submitted in the Statement of
               Facts, and [the factual basis] further
               failed to prove that Mr. Jefferson
               possessed or distributed cocaine." (Id.)

---

[1] The Court employs the pagination assigned to the parties'
submissions by the CM/ECF docketing system. The Court corrects
the capitalization, punctuation, spelling, and spacing in the
quotations from Jefferson's submissions.

Claim Four        "The District Court erred [in accepting
                   Jefferson's guilty plea] when the factual
                   basis for the plea was inadequate and
                   violate[d] Fed. Rule 11(b)(3)."² (Id.
                   at 6.)

Claim Five        Counsel rendered ineffective assistance
                   (a) by failing "to advise Mr. Jefferson
                   [of] the error in the Statement of
                   Facts[;] [specifically,] that the
                   government could not prove the elements
                   of possession or distribution charged in
                   Count One," (id. at 5); (b) by failing to
                   object to the inadequate Statement of
                   Facts, (id.); (c) by failing to advise
                   Jefferson that "if in fact he [took]
                   [the] plea, that he would be eligible for
                   the career offender application," (id.
                   at 7); and, (d) by failing "to inform
                   [Jefferson of] [his] right[] to appeal
                   his suppression motion." (Id. at 5.)

The Government responded, asserting that Jefferson's claims lack

merit. (ECF No. 67.) For the reasons set forth below, Jefferson's

§ 2255 Motion (ECF No. 62) will be denied.

---

² Rule 11(b)(3) of the Federal Rules of Civil Procedure
provides:

(b) Representations to the Court. By presenting to the
court a pleading, written motion, or other paper--
whether by signing, filing, submitting, or later
advocating it--an attorney or unrepresented party
certifies that to the best of the person's knowledge,
information, and belief, formed after an inquiry
reasonable under the circumstances:

. . . .
(3) the factual contentions have evidentiary
support or, if specifically so identified, will
likely have evidentiary support after a reasonable
opportunity for further investigation or discovery
. . . .

Fed. R. Civ. P. 11(b)(3).

2

## I.   FACTUAL AND PROCEDURAL HISTORY

On April 21, 2015, a grand jury charged Jefferson with distributing cocaine hydrochloride, a Schedule II controlled substance (Count One), and possession with intent to distribute cocaine hydrochloride (Count Two). (Indictment 1-2, ECF No. 1.)

On June 12, 2015, Jefferson, proceeding with counsel, filed a Motion to Suppress, requesting that the Court "suppress evidence obtained as the result of the illegal search of the residence of 5716 Belmont Road, Chesterfield, Virginia on November 21st, 2014, as it was a warrantless search in violation of Mr. Jefferson's Fourth Amendment rights." (ECF No. 11, at 1.) On July 15, 2015, the Court held a hearing on the Motion to Suppress (see ECF Nos. 27, 28), and by Order entered on July 16, 2015, the Court denied the Motion to Suppress. (ECF No. 29.)

On October 19, 2015, Jefferson pled guilty to Count One of the Indictment. (Plea Agreement ¶ 1, ECF No. 42.) In the Plea Agreement, Jefferson agreed that he was pleading guilty because he was "in fact guilty of the charged offense," "admit[ted] the facts set forth in the statement of facts filed with this plea agreement[,] and agree[d] that those facts establish guilt of the offense charged beyond a reasonable doubt." (Id. ¶ 3.) Jefferson also agreed that "[t]he maximum penalties for this offense [were]: a maximum term of twenty years of imprisonment; a fine of $1,000,000; full restitution; a special assessment; and at least

3

three years of supervised release" (id. ¶ 1), and "that the Court has jurisdiction and authority to impose any sentence within the statutory maximum . . . ." (Id. ¶ 5.)

Further, the Plea Agreement provided that "[t]he United States makes no promise or representation concerning what sentence the defendant will receive . . . ." (Id.) Jefferson agreed that he understood that he was waiving his right to appeal his conviction and "any sentence within the statutory maximum described above (or the manner in which that sentence was determined) . . . ." (Id. ¶ 6.) "As a condition of the execution of [the Plea Agreement] and the Court's acceptance of [Jefferson's] plea of guilty, the United States [agreed to] move to dismiss the remaining count of the indictment against [Jefferson]." (Id. ¶ 11.) The Government also agreed that it would "not file an information in this Court, pursuant to 28 U.S.C. § 851, stating [Jefferson's] prior conviction for a felony drug offense." (Id. ¶ 10.)

In the accompanying Statement of Facts, Jefferson agreed that the following facts were true and correct:

1.    On or about November 20, 2014, in the Eastern District of Virginia, and within the jurisdiction of this Court, KEVIN SHIONELL JEFFERSON distributed cocaine hydrochloride, a Schedule II controlled substance.
2.    On November 20, 2014, Chesterfield County Police Officers utilized a confidential source ("CS") to arrange a purchase of one ounce of powder cocaine from Dwaine Boxley at the parking lot of a 7-11 convenience store located at 7040 Hull Street Road in Chesterfield

County, Virginia. When Boxley arrived at the 7-11, Boxley entered the CS's vehicle and obtained the purchase money from the CS. Then Boxley exited the CS's vehicle and went to JEFFERSON'S vehicle which was also parked in the 7-11 parking lot. JEFFERSON distributed one ounce of powder cocaine to Boxley in exchange for $1500. Boxley in turn distributed the powder cocaine to the CS, who turned the cocaine over to the police officers. The suspected cocaine was submitted to the Department of Forensic Science for analysis and was determined to be 26.88 grams of powder containing a detectable amount of cocaine, a Schedule II controlled substance.

3. The acts taken by the defendant, KEVIN SHIONELL JEFFERSON, in furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

(Statement of Facts ¶¶ 1-3, ECF No. 43.)

During the Rule 11 proceedings on October 19, 2015, Jefferson confirmed his understanding of the charges and the penalties for the charges. (See, e.g., Oct. 19, 2015 Tr. 8-9, ECF No. 65.) When asked if he "had a sufficient opportunity to discuss with [his] lawyer not only the charges, but also whether or not [he] [had] a possible defense, some way that [he] could say that [he was] not guilty of [the] charge," Jefferson responded in the affirmative. (Oct. 19, 2015 Tr. 10.) Jefferson also responded in the affirmative when asked if he had discussed the Plea Agreement with his attorney. (Oct. 19, 2015 Tr. 10.) Jefferson agreed that he

5

was pleading guilty because he was "in fact guilty of what the government says [he] did." (Oct. 19, 2015 Tr. 18.)

Jefferson indicated that he was "satisfied with all the work that [counsel] [had] done on [his] behalf." (Oct. 19, 2015 Tr. 15.) Jefferson agreed that he understood "that regardless of [counsel's] experience and [counsel's] advise to [him], at the end of the day that it [was his] decision, and [his] decision alone about whether or not to plead guilty here today because [he was] the one that faces the consequences of this." (Oct. 19, 2015 Tr. 15-16.)

Further, the Court explained that Jefferson's maximum sentence was twenty years of incarceration, and that the exact sentence would depend upon the sentencing guidelines and Jefferson's criminal history. (See, e.g., Oct. 19, 2015 Tr. 11-13.) When asked if he and his counsel had discussed "how the sentence [was] going to be determined, most notably under what is known as the sentencing guidelines," Jefferson responded in the affirmative. (Oct. 19, 2015 Tr. 10.) Jefferson agreed that he understood that these potential sentences were predictions not promises and that counsel had discussed potential sentences with him. (Oct. 19, 2015 Tr. 14-15.)

After Jefferson's guilty plea, a Pre-Sentence Investigation Report ("PSR") was prepared. (PSR, ECF No. 47.) With a three-point reduction for acceptance of responsibility (id. ¶¶ 26-27),

6

Jefferson's total offense level was 29. (Id. ¶ 28.) Based on Jefferson's prior convictions, he qualified as a career offender, which placed him in Criminal History Category VI. (Id. ¶ 48.) Jefferson's sentencing guidelines range was 151 to 188 months of incarceration.[3] (Id. at 26.)

During sentencing, neither party noted any objections to the PSR; however, Jefferson moved for a downward variance, which the Court denied. (See ECF No. 59, at 1.) After considering a host of relevant factors, the Court sentenced Jefferson to 188 months of incarceration. (See ECF No. 60, at 2.)

Jefferson did not appeal. On January 17, 2017, the Court received the instant § 2255 Motion. (§ 2255 Mot. 1.)

## II. ACTUAL INNOCENCE

In Claim One, which is hardly a model of clarity, Jefferson contends that he is actually innocent of the crime of which he was convicted. (See § 2255 Mot. 1.) Jefferson appears to believe that he is actually innocent because, based on his own interpretation of the Government's evidence of his guilt, his "[guilty] plea was not voluntarily and knowingly enter[ed] due to

---

[3] In the absence of a guilty plea and if the Government had moved for a § 851 enhancement due to Jefferson's prior felony drug offense, by the Court's calculation, Jefferson's sentencing range would have been 262 to 327 months of incarceration. See USSG § 4B1.1.

the inadequate factual basis stipulation[,] [which] was [also] misleading." (Id. at 6.)

With respect to actual innocence, a "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998) (citation omitted) (internal quotation marks omitted). Moreover, actual innocence refers to "factual innocence, not mere legal insufficiency." Id. (citation omitted).

Here, for the reasons set forth below, Jefferson has not satisfied his burden to demonstrate that he is factually innocent of distribution of cocaine hydrochloride. Instead, Jefferson contends that his conviction under 21 U.S.C. § 841 is legally insufficient because the "factual basis stipulation [supporting his guilty plea] was misleading" and "inadequate." (§ 2255 Mot. 6.)

Jefferson argues that the "misleading" stipulation was "that [Jefferson] possess[ed] and distribute[d] cocaine, where the evidence [in the] exhibits attached [to his § 2255 Motion] explains the true version of events." (Id. at 6-7.) Specifically, Jefferson argues that "the Government could not prove the possession element in Count One [of] the Indictment, knowing that the Chesterfield County Police incident report set forth a different set of facts." (Id. at 4.) As further support for his

8

actual innocence claim, Jefferson also argues that "[t]he Government['s] response to [his] motion to suppress . . . never stated that [Jefferson] distribute[d] cocaine or possessed cocaine." (Id.) Arguments of this sort (based on Jefferson's interpretation of the Government's evidence of his guilt) are arguments addressed to "mere legal insufficiency," and Jefferson has failed to satisfy his burden to demonstrate that he is factually innocent of distribution of cocaine hydrochloride. Bousley, 523 U.S. at 623 (citation omitted).[4]

Moreover, because Jefferson's argument about perceived inconsistencies in the Statement of Facts accompanying his Plea

---

[4] Additionally, Jefferson's present assertions are contrary to his sworn statements during the Rule 11 plea colloquy and in the Statement of Facts accompanying his Plea Agreement. Specifically, in the Statement of Facts, Jefferson admitted that "[o]n or about November 20, 2014," he "distributed cocaine hydrochloride, a Schedule II controlled substance." (Plea Agreement ¶ 1.) He also agreed that by pleading guilty, he was "admitting all the essential elements of the offense," and was "saying in effect that [he] did this crime," and "[he could] never again say that [he] did not do it." (Oct. 19, 2016 Tr. 18.) Further, he agreed that he understood "that by pleading guilty [he was] admitting not only that [he] did what the government says [he] did, but also [that] the government can prove it." (Oct. 19, 2019 Tr. 18.)

In light of Jefferson's sworn statements during the Rule 11 proceedings, absent extraordinary circumstances, Jefferson's instant statements to the contrary are "palpably incredible." United States v. Lemaster, 403 F.3d 216, 222 (4th Cir. 2005) (citation omitted); see Escamilla v. Jungwirth, 426 F.3d 868, 870 (7th Cir. 2005) (citations omitted). Jefferson fails to demonstrate any such extraordinary circumstances, and therefore, "the truth of [his] sworn statements made during [the] Rule 11 colloquy is conclusively established." Lemaster, 403 F.3d at 221-22 (citations omitted).

9

Agreement clearly lacks merit, the Court briefly addresses this argument. In support of his allegations about the Statement of Facts, Jefferson submits a police report from the Chesterfield County Police as an exhibit to his § 2255 Motion. (ECF No. 62-2, at 1-5.) This exhibit appears to be the police report that Jefferson contends "set[s] forth a different set of facts." (See id.; see also § 2255 Mot. 4.) However, Jefferson is incorrect. As explained below, the police report submitted by Jefferson is consistent with the Statement of Facts accompanying his Plea Agreement.

The police report, which details a Chesterfield County Police investigation of another individual, Dwaine Boxley, states, in pertinent part:

> SYNOPSIS
> On November 20, 2014, Chesterfield Count[y] Police Narcotics Unit arranged for the purchase of a quantity of cocaine from Dwaine BOXLEY utilizing Chesterfield County Police Department Confidential Source [name redacted in original]. This report details the operation and subsequent actions of law enforcement.
> DETAILS
> On November 20, 2014, Corporal Blaine Davis received information from CS [confidential source] that BOXLEY was residing in Ashley Park apartment complex on Belt Boulevard[,] Richmond[,] Virginia. The CS went on to explain that BOXLEY regularly operated a light blue Dodge Caravan with a handicapped placard suspended from [the] rear view window. The CS described BOXLEY as a large black male who continually wore Washington Redskins [apparel].
> . . . .
> At approximately 3:33 p.m., Detective Scott Duquette observed a light blue Dodge [C]aravan with a handicapped placard suspended from its rear view mirror

bearing Virginia registration WNT-9868. The vehicle was operated by a heavy set black male wearing a red Washington Redskins sweater, a Washington Redskins knit hat and blue jeans. Detectives conducted surveillance operation on the vehicle and followed it to the Colony House Motor Lodge located at 6414 Midlothian Turpike[,] Richmond[,] Virginia.

At approximately 3:48 p.m., Corporal Davis met with CS at a predetermined location. The CS and the vehicle utilized by the CS was searched by Corporal Davis and Detective Ambrose and found to be free of any contraband. The CS was then provided with audio recording/transmitting device and $1,500.00 in previously recorded Official Agency Funds (OAF).

At approximately 3:50 p.m., CS placed a phone call to BOXLEY at [partial phone number redacted in original] 9434. As a result of the phone call, BOXLEY agreed to meet the CS in the parking lot of the 7-11 located at 7040 Hull Street[,] Chesterfield[,] Virginia to purchase cocaine.

. . . .

At approximately 4:00 p.m., Detectives observed BOXLEY arrive in the parking lot of the 7-11 and park in a parking stall adjacent to the CS.

At approximately 4:03 p.m., Detective Regan observed BOXLEY exit his vehicle and enter the front right passenger seat of the CS vehicle and exit a short time later. Lt. Profita then observed BOXLEY enter the front right passenger seat of a red Chrysler 4 door bearing Virginia registration WPZ-4638 operated by a slender black male in his late 20's wearing a gray hooded sweat shirt and blue jeans which was parked in the parking lot of the 7-11. A short time later Lt. Profita observed BOXLEY exit the red Chrysler and enter the front right passenger seat of the CS vehicle.

At approximately 4:10 p.m., Lt. Profita observed the red Chrysler exit the parking lot and travel on Hull Street Eastbound. The vehicle was followed by Corporal Davis, Detective Regan and Sergeant Mike Young to the parking lot of 7-11 located at 5549 Belmont Road and then to an apartment located at [address redacted in original] Belmont Road. INVESTIGATOR'S NOTE: The operator of the vehicle parked in a parking stall in a parking lot at the rear of the residence and entered through a rear door.

11

At approximately 4:12 p.m., Detective Regan observed BOXLEY exit the CS's vehicle and depart the area in the Light Blue Dodge Caravan. . . .

At approximately 4:12 p.m., [t]he CS departed the area followed by Detective Ambrose who met the CS at a predetermined location and seized a plastic baggie containing a white material (Exhibit 1). Detective Ambrose conducted a search of the CS and vehicle utilized by the CS and discovered no illegal contraband or OAF. The audio recording device utilized by the CS was seized, however, had recorded no interaction between the CS and BOXLEY. INVESTIGATORS NOTE: A chemical field test of the white material by detective Ambrose indicated positive for cocaine.

At approximately 4:50 p.m., Sergeant Young observed the same individual exit the rear door of [address redacted in original] Belmont Road, secure it with a key and enter the Red Chrysler 4 door bearing Virginia registration WPZ-4638.

. . . .

The identity of the individual operating the red Chrysler has not been determined. However, the individual was identified by the CS as BOXLEY's cocaine source of supply.

(ECF No. 62-2, at 2-3 (paragraph numbers omitted).) Jefferson was subsequently identified as the driver of the red Chrysler 4-door vehicle, who "was identified by the CS as BOXLEY's cocaine source of supply." (Id.; Statement of Facts ¶ 2; see ECF No. 13, at 3.) Contrary to Jefferson's characterization of the Statement of Facts as inconsistent with the Chesterfield County police report, the Statement of Facts accompanying Jefferson's Plea Agreement, actually states, in pertinent part:

On November 20, 2014, Chesterfield County Police Officers utilized a confidential source ("CS") to arrange a purchase of one ounce of powder cocaine from Dwaine Boxley at the parking lot of a 7-11 convenience store located at 7040 Hull Street Road in Chesterfield County, Virginia. When Boxley arrived at the 7-11,

12

Boxley entered the CS's vehicle and obtained the purchase money from the CS. Then Boxley exited the CS's vehicle and went to JEFFERSON'S vehicle which was also parked in the 7-11 parking lot. JEFFERSON distributed one ounce of power cocaine to Boxley in exchange for $1500. Boxley in turn distributed the powder cocaine to the CS, who turned the cocaine over to the police officers.

(Statement of Facts ¶ 2.) That description of the manner in which Jefferson distributed cocaine to Boxley is fully consistent with the police report from the Chesterfield County Police, and Jefferson's argument that the Statement of Facts and the police report are inconsistent lacks merit.

As further support for his argument about inconsistencies in the Statement of Facts, Jefferson says that "[t]he Government['s] response to [his] motion to suppress . . . never stated that [Jefferson] distribute[d] cocaine or possessed cocaine." (§ 2255 Mot. 4.) However, Jefferson's Motion to Suppress sought to suppress evidence that was seized in a subsequent search of Jefferson's residence, and the motion did not challenge the police's observation of the interaction between Jefferson and Boxley during which Jefferson distributed cocaine to Boxley. (See ECF No. 11, at 1-8.) Furthermore, whether the Government specifically stated that Jefferson distributed cocaine in its response to Jefferson's Motion to Suppress has no relevance to the

13

statements set forth in the Statement of Facts accompanying
Jefferson's Plea Agreement.[5]

Finally, Jefferson submits an exhibit, which he styles as a
"Sworn Affidavit Letter," in which he states, inter alia, "I, Mr.
Jefferson, advise[d] my counsel that I did not possess [or]
distribute any cocaine." (ECF No. 62-5, at 2.) However, the
putative "affidavit" is neither signed nor notarized. (See id.)
Thus, the "affidavit" does not constitute sworn evidence. See
Price v. Rochford, 947 F.2d 829, 832 (7th Cir. 1991) (refusing to
consider documents verified in such a manner to avoid the penalty
of perjury); Hogge v. Stephens, No. 3:09CV582, 2011 WL 2161100,
at *2-3 & n.5 (E.D. Va. June 1, 2011) (treating statements sworn
to under penalty of perjury, but made upon information and belief,
as "mere pleading allegations") (quoting Walker v. Tyler Cty.
Comm'n, 11 F. App'x 270, 274 (4th Cir. 2001)).

For the foregoing reasons, Jefferson has failed to satisfy
his burden to demonstrate that he is factually innocent of
distribution of cocaine hydrochloride. Accordingly, Claim One
will be dismissed.

---

[5] The Court notes that following a hearing, in an Order entered
on July 15, 2015, the Court denied Jefferson's motion to suppress.
(ECF No. 29, at 1.)

14

## III. FACTUAL BASIS SUPPORTING GUILTY PLEA

In Claims Two, Three, and Four, Jefferson presents claims asserting, in one way or another, that the factual basis underlying his guilty plea was insufficient to support his guilty plea. Specifically, in Claim Two, Jefferson contends that the Government "submitted and stipulated misleading facts in the Plea Agreement['s] attached Statement of Facts," violating "[USSG] Section 6B1.4(a)(1), (2)."[6] (§ 2555 Mot. 5.) Relatedly, in Claim Three, Jefferson argues that "[t]he Government['s] factual basis for the plea is inadequate to support the guilty plea in Count One due to the misleading facts submitted in the Statement of Facts, and [the factual basis] further failed to prove that [Jefferson] possessed or distributed cocaine." (Id.) In Claim Four, Jefferson argues that "[t]he District Court erred [in accepting Jefferson's

---

[6] USSG § 6B1.4(a) provides, in pertinent part:

(a) A plea agreement may be accompanied by a written stipulation of facts relevant to sentencing. Except to the extent that a party may be privileged not to disclose certain information, stipulations shall:
(1) set forth the relevant facts and circumstances of the actual offense conduct and offender characteristics; [and,]
(2) not contain misleading facts . . . .

USSG § 6B1.4(1)-(2). Contrary to Jefferson's assertion that the Statement of Facts accompanying his Plea Agreement violated USSG § 6B1.4(a)(1)-(2), as explained herein, the Statement of Facts "set forth the relevant facts and circumstances" of Jefferson's offense and did not contain misleading facts. Therefore, Jefferson's claim that the Statement of Facts violated USSG § 6B1.4(a)(1)-(2) lacks merit.

guilty plea] when the factual basis for the plea was inadequate and violate[d] Fed. Rule 11(b)(3)."  (Id. at 6.)

All three of those allegations are contrary to the sworn statements made by Jefferson during the Rule 11 plea colloquy. Jefferson's Plea Agreement and the accompanying Statement of Facts also undercut the present allegations.  During the plea colloquy, Jefferson affirmed that he understood "what [he had] been charged with here, most notably, the distribution of cocaine," and that the elements of the offense were that "[he] distributed cocaine to somebody else[;] [meaning,] [he] gave it to somebody else."  (Oct. 19, 2015 Tr. 8-9.)  Jefferson also affirmed that he was pleading guilty to "[the] charge because [he was] in fact guilty of what the government says [he] did," (Oct. 19, 2015 Tr. 18.), and, he "admit[ted] the facts set forth in the statement of facts filed with this plea agreement[,] and agree[d] that those facts establish guilt of the offense charged beyond a reasonable doubt."  (Plea Agreement ¶ 3.)  Jefferson also agreed that he understood "that by pleading guilty [he was] admitting not only that [he] did what the government says [he] did, but also [that] the government can prove it."  (Oct. 19, 2019 Tr. 18.)

In light of Jefferson's sworn statements during the Rule 11 proceedings, absent extraordinary circumstances, Jefferson's current statements that are contrary to what he said under oath in the plea colloquy are "palpably incredible."  United States v.

16

Lemaster, 403 F.3d 216, 222 (4th Cir. 2005) (citation omitted);
see Escamilla v. Jungwirth, 426 F.3d 868, 870 (7th Cir. 2005)
(citations omitted) ("It is difficult to see how a collateral
attack based on the proposition that the petitioner's own trial
testimony was a pack of lies has any prospect of success.
Litigants must live with the stories that they tell under oath."),
abrogated on other grounds by McQuiggin v. Perkins, 569 U.S. 383,
397 (2013). Jefferson has not demonstrated any such extraordinary
circumstances.    See Lemaster, 403 F.3d at 221-22 (citations
omitted) (explaining that "extraordinary circumstances" may exist
if a "petitioner introduce[s] documentary evidence supporting his
claim that he was severely ill, both physically and mentally, and
uncounselled at the time of his Rule 11 colloquy").    Because
Jefferson has not demonstrated any extraordinary circumstances,
"the truth of [his] sworn statements made during [the] Rule 11
colloquy is conclusively established."    Id. at 222 (explaining
that "a district court should, without holding an evidentiary
hearing, dismiss any § 2255 motion that necessarily relies on
allegations that contradict the sworn statements").    Accordingly,
Claims Two, Three, and Four will be dismissed.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of Strickland to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted

18

on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).
Any assertion by Jefferson that he would not have pled guilty if
he had received better assistance from counsel is not dispositive
of the issue. See United States v. Mora-Gomez, 875 F. Supp. 1208,
1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and
[highly] dependent on the likely outcome of a trial had the
defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358,
369 (4th Cir. 2007) (internal citation omitted) (citing Hill, 474
U.S. at 59-60). The Court looks to all the facts and circumstances
surrounding a petitioner's plea, including the likelihood of
conviction and any potential sentencing benefit to pleading
guilty. See id. at 369-70.

**B. Claim Five (a), (b), and (c)**

In Claim Five (a), (b), and (c), Jefferson presents claims of
ineffective assistance of counsel with respect to his guilty plea.
In Claim Five (a), Jefferson argues that counsel rendered
ineffective assistance by failing "to advise Mr. Jefferson [of]
the error in the Statement of Facts [accompanying the Plea
Agreement;] [specifically,] that the government could not prove
the elements of possession or distribution charged in Count One."
(§ 2255 Mot. 5.) Relatedly, in Claim Five (b), Jefferson argues
that counsel failed to object to the inadequate Statement of Facts
during the plea hearing and after the plea hearing. (Id.) In
Claim Five (c), Jefferson contends that counsel rendered

19

ineffective assistance because counsel failed to advise Jefferson that, "if in fact he [took] [the] plea, that he would be eligible for the career offender application." (Id. at 7.)

1. **Claims Precluded By Validly Entered Guilty Plea**

As an initial matter, and as explained above, Jefferson's present allegations regarding the factual basis supporting his guilty plea are contrary to his sworn statements during the Rule 11 proceedings. See supra Part III (discussing Jefferson's specific sworn statements regarding the factual basis for the guilty plea that are contrary to his present allegations).

Moreover, with respect to Jefferson's decision to plead guilty, Jefferson agreed, during the plea colloquy, that he understood "that regardless of [counsel's] experience and [counsel's] advise to [him], at the end of the day that it [was] [his] decision, and [his] decision alone about whether or not to plead guilty here today because [he] [was] the one that faces the consequences of this." (Oct. 19, 2015 Tr. 15-16.) Jefferson also agreed that he was "satisfied with all the work that [counsel] [had] done on [his] behalf." (Oct. 19, 2015 Tr. 15.)

Further, Jefferson said that he understood that his maximum sentence was twenty years of incarceration, and that the exact sentence would depend upon the sentencing guidelines and Jefferson's criminal history. (See, e.g., Oct. 19, 2015 Tr. 11-13.) Jefferson also agreed that he and his counsel had discussed

20

"how the sentence [was] going to be determined, most notably under what is known as the sentencing guidelines." (Oct. 19, 2015 Tr. 10.)

In light of Jefferson's sworn statements during the Rule 11 proceedings, absent extraordinary circumstances, Jefferson's instant statements to the contrary are again "palpably incredible." United States v. Lemaster, 403 F.3d 216, 222 (4th Cir. 2005) (citation omitted); see Escamilla v. Jungwirth, 426 F.3d 868, 870 (7th Cir. 2005) (citations omitted). Jefferson fails to demonstrate any such extraordinary circumstances, and therefore, "the truth of [his] sworn statements made during [the] Rule 11 colloquy is conclusively established." See Lemaster, 403 F.3d at 221-22 (citations omitted). For this reason alone, Claim Five (a), (b), and (c) can be dismissed.

## 2. No Deficiency In Counsel's Performance, And No Resulting Prejudice

As explained below, Jefferson also fails to demonstrate any deficiency in counsel's performance, or resulting prejudice. To support his ineffective assistance of counsel claims, Jefferson submits a "Sworn Affidavit Letter," which as discussed above, is neither signed nor notarized. In his "Sworn Affidavit Letter," Jefferson states:

Mr. Barley advise[d] me of a Plea Agreement forward[ed] by the Government. Mr. Barley went over with me the Plea Agreement and advise[d] me that I should take the plea offer.

21

I, Mr. Jefferson, advise[d] my counsel that I did
not possess [or] distribute any cocaine.
        Counsel Mr. Barley told me that I did not have a
chance in hell and it [was] my word against anyone else,
and that I should take the plea, because if I don't, I
would receive up to 25 years.
        I accepted my counsel['s] advice and sign[ed] the
Plea Agreement.
        Counsel Mr. Barley never advise[d] me that I was
applicable as a career offender under 4B1.1.

(ECF No. 62-5, at 2 (paragraph numbers omitted).) However, because

the affidavit is not signed nor notarized, the affidavit does not

constitute sworn evidence. See Price v. Rochford, 947 F.2d 829,

832 (7th Cir. 1991); Hogge v. Stephens, No. 3:09CV582, 2011 WL

2161100, at *2-3 & n.5 (E.D. Va. June 1, 2011).

        Furthermore, with respect to the claim that counsel failed to

advise him of, and object to, the insufficient factual basis

supporting his guilty plea, counsel cannot be faulted for failing

to act on this meritless argument.    Specifically, Jefferson's

argument regarding the insufficiency of the Statement of Facts

lacks merit because the Statement of Facts adequately set forth

sufficient facts to support all elements necessary for a conviction

for distribution of cocaine hydrochloride, the crime to which

Jefferson pled guilty.    Thus, because Jefferson's claims regarding

the insufficiency of the Statement of Facts lacks merit, counsel

cannot be faulted for failing to advise Jefferson of this meritless

argument, and counsel reasonably eschewed the challenge Jefferson

urges here.    See Moore v. United States, 934 F. Supp. 724, 731

(E.D. Va. 1996) (explaining that "[f]ailure to raise a meritless argument can never amount to ineffective assistance"); see also Strickland, 466 U.S. at 687, 691.

In any event, Jefferson fails to establish any prejudice under Strickland as related to counsel's actions with respect to Jefferson's guilty plea. To establish prejudice, Jefferson must show that "but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. "To determine [Jefferson's] reasonable likelihood of going to trial, [the Court] must look to the strength of the [Government's] case 'inasmuch as a reasonable defendant would surely take it into account.'" United States v. Swaby, 855 F.3d 233, 243 (4th Cir. 2017) (citation omitted). Jefferson must show that a decision to proceed to trial "would have been rational under the circumstances." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). "[Jefferson's] subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." Id. (citation omitted).

Here, the evidence of Jefferson's guilt is overwhelming. Therefore, it is not reasonably likely that a defendant, such as Jefferson, would have rationally proceeded to trial. Specifically, on November 21, 2014, Jefferson distributed cocaine

hydrochloride to another individual, Boxley, who in turn distributed it to a confidential informant. The confidential informant then turned the cocaine over to the police. No evidence contradicted this testimony or called it into question. Based on this overwhelming evidence of guilt, a rational defendant would not have risked proceeding to trial. See Fugit, 703 F.3d at 260-61 ("[P]roceeding to trial would have been irrational where defendant 'faced overwhelming evidence of her guilt' and 'had no rational defense, would have been convicted and would have faced a longer term of incarceration.'" (quoting Pilla v. United States, 668 F.3d 368, 373 (6th Cir. 2012))).

Additionally, by pleading guilty, Jefferson significantly reduced his sentencing exposure. Specifically, as part of Jefferson's Plea Agreement, the Government agreed to dismiss the remaining count of the two-count Indictment against Jefferson. (Plea Agreement ¶ 12.) Therefore, by pleading guilty to Count One, with respect to Jefferson's sentence, he received the benefit of the dismissal of the remaining count of the two-count Indictment. Jefferson also gained the benefit of a three-point reduction in offense level for acceptance of responsibility. (PSR ¶¶ 26-27.) Furthermore, if the Government had moved for a § 851 enhancement and Jefferson had been convicted following a trial, Jefferson would have faced a statutory maximum penalty of more than twenty-five years of imprisonment. As a result of this

24

increased statutory maximum sentence, Jefferson's total offense level would have been 34, which would have increased his sentencing range to 262 to 327 months.[7] See USSG § 4B1.1. In comparison, as a result of his guilty plea and the benefits he received pursuant to the plea, Jefferson's sentencing range was 151 to 188 months of incarceration. (PSR 26.)

Thus, Jefferson's sworn statements, coupled with the Government's evidence and the tangible benefit received by Jefferson, belies any reasonable probability that Jefferson "would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Therefore, in addition to failing to demonstrate any deficiency of counsel, Jefferson fails to demonstrate any resulting prejudice as related to counsel's actions with respect to Jefferson's guilty plea. See Strickland, 466 U.S. at 687, 691; see also Hill, 474 U.S. at 59. Accordingly, Claim Five (a), (b), and (c) will be dismissed.

**C. Claim Five (d)**

In Claim Five (d), Jefferson contends that counsel rendered ineffective assistance because counsel failed "to inform [Jefferson of] [his] right[] to appeal his suppression motion."

---

[7] The Court notes that because of Jefferson's prior convictions, he qualified as a career offender, which placed him in Criminal History Category VI.

(§ 2255 Mot. 5.) For the reasons set forth below, Jefferson fails to demonstrate any deficiency of counsel or resulting prejudice.

"The right to challenge on appeal a Fourth Amendment issue raised in a motion to suppress is a nonjurisdictional defense and thus is forfeited by an unconditional guilty plea." United States v. Locklear, 514 F. App'x 315, 317 (4th Cir. 2013) (citing Haring v. Prosise, 462 U.S. 306, 320 (1983)); see Fields v. Attorney Gen. of State of Md., 956 F.2d 1290, 1294 (4th Cir. 1992) ("It is well-established that a voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations." (citation omitted)). Here, by entering into the Plea Agreement, Jefferson waived his "right to appeal the conviction and any sentence within the statutory maximum . . . on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatsoever . . . ." (Plea Agreement ¶ 6.) Jefferson's plea was unconditional, and by entering into an unconditional guilty plea, Jefferson "waived his right to appeal the denial of his [M]otion to [S]uppress." Locklear, 514 F. App'x at 317. Therefore, any appeal challenging the denial of the Motion to Suppress would have been foreclosed by the waiver contained in Jefferson's Plea Agreement. See id. Accordingly, Jefferson cannot demonstrate that he would have prevailed had counsel appealed the denial of the Motion to Suppress. See Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (discussing that a petitioner

26

must "demonstrate that 'counsel was objectively unreasonable' in failing to file a merits brief addressing a nonfrivolous issue and that there is 'a reasonable probability that, but for his counsel's unreasonable failure . . ., he would have prevailed on his appeal'" (quoting Smith v. Robbins, 528 U.S. 259, 287 (2000))).

Moreover, Jefferson proffers no evidence suggesting that the Government offered (or would have offered), or that the Court would have accepted, a conditional plea that preserved his right to appeal the denial of his Motion to Suppress. Cf. Missouri v. Frye, 566 U.S. 134, 148 (2012) ("[A] defendant has no right to be offered a plea, nor a federal right that the judge accept it." (citations omitted)); Lafler v. Cooper, 566 U.S. 156, 168 (2012) (discussing that a defendant cannot demonstrate prejudice with respect to a plea offer "[i]f no plea offer is made"). Thus, because Jefferson cannot demonstrate any deficiency of counsel or resulting prejudice, Claim Five (d) will be dismissed.

## V. REQUEST FOR THE APPOINTMENT OF COUNSEL

In Jefferson's § 2255 Motion, he requests that the Court appoint "counsel in this case." (ECF No. 62, at 1.) No constitutional right to have appointed counsel in post-conviction proceedings exists. Mackall v. Angelone, 131 F.3d 442, 449 (4th Cir. 1997). The Court, however, may appoint counsel to a financially eligible person if justice so requires. See 18 U.S.C.

§ 3006A(a)(2)(B). For example, appointment of counsel for an indigent petitioner is appropriate in a 28 U.S.C. § 2255 action when necessary for utilization of discovery procedures or when an evidentiary hearing is required. See Rules Governing Section 2255 Proceedings for the U.S. District Courts, Rules 6(a) and 8(c).

Upon review of Petitioner's motion, the Court concludes that the issues in this matter are not complex and the interests of justice do not require the appointment of counsel. Accordingly, Jefferson's request for the appointment of counsel (ECF No. 62, at 1) will be denied without prejudice.

## VI. CONCLUSION

For the foregoing reasons, Jefferson's claims will be dismissed. Jefferson's request for the appointment of counsel (ECF No. 62, at 1) will be denied without prejudice. Jefferson's

§ 2255 Motion (ECF No. 62) will be denied. The action will be dismissed. A certificate of appealability will be denied.

The Clerk is directed to send a copy of the Memorandum Opinion to Jefferson and counsel of record.

It is so ORDERED.

/s/   *RЄP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 11, 2020

28